(43 App. Div. 58.)

KIERNAN v. FOX

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

BANKRUPTCY—ACKNOWLEDGMENT OF DISCHARGED DEBT.
    A debt discharged in bankruptcy is not revived, as against the bankrupt, by expressions in his letter, to one interested in its collection, stating that: "When I am in position to pay, there is no one I would more cheerfully pay. I have interests in real estate. and when I realize on them I will not forget the deceased friend's family."

Appeal from trial term, New York county.

Action by Eliza M. Kiernan against Edward Fox, as administrator. From an order setting aside a verdict for plaintiff, the plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J. and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

John R. Halsey, for appellant.
Louis O. Van Doren, for respondent.

BARRETT, J.   The motion to set aside this verdict, made upon
the minutes, was granted upon the authority of Scheper v. Briggs,
28 App. Div. 115, 50 N. Y. Supp. 869.   From this we infer that the
learned trial justice thought that the defense of the decedent's dis-
charge in bankruptcy should have been sustained.   In reviewing his
decision, it may be assumed that the plaintiff proved the original
loans to Mr. Fox, as averred in her complaint.   These loans were
made by her in the year 1872, and Mr. Fox was discharged from all
his debts by a decree in bankruptcy made in the year 1881.   The
question then is, did the plaintiff establish a new promise by Mr.
Fox to pay the debt, made subsequent to his discharge?   It is well
settled that, to revive a debt discharged by a decree in bankruptcy,
there must be an express and distinct promise in writing to pay it.
Moore v. Viele, 4 Wend. 422; Allen v. Ferguson, 18 Wall. 1; Law-
rence v. Harrington, 122 N. Y. 408, 25 N. E. 406; Elwell v. Cum-
ner, 136 Mass. 102; Bigelow v. Norris, 141 Mass. 14, 6 N. E. 88;
Scheper v. Briggs, 28 App. Div. 115, 50 N. Y. Supp. 869.   In the
latter case, Justice Rumsey said that, "although the promise need
not be expressed, it must be one which is necessarily implied from
the words of the writing."   This language was evidently not intend-
ed to convey the idea that the promise need not be express.   It sim-
ply pointed out that even an express promise need not be expressed
in any particular form of words.   As was said in Railroad Co. v.
Dudley, 14 N. Y. 351: "If the language used, when fairly inter-
preted, imports an undertaking to pay, this, I apprehend, consti-
tutes an express promise."   Was there, then, an express promise
here to pay the discharged debt?   The plaintiff's case on this head
rests entirely upon a letter written by Mr. Fox in August, 1886, to
a friend of the plaintiff, one O'Reilly.   O'Reilly was the person who
negotiated the loan, and he was interested in securing payment.
The letter reads as follows:

"Patrick Fox, Real Estate, No. 111 Broadway, Room 107.

"New York, August 23, 1886.

"My Dear O'Reilly:  Yours of the 21st of July came duly to hand, and in
reply thereto would say that at the present time I am in no condition to pay.
One would suppose, to see my name in the papers, that I was a capitalist; but
a great many of the sales at the R. E. Exchange, where I am reported as the
purchaser, is for some friend, or where the property belongs to a friend, where
I have to bid it in.   However, I will say to you that when I am in a position to
pay there is no one I would more cheerfully pay.   I have a number of inter-
ests in real estate, and hope to realize on some of them soon, and when do, I
will not forget the deceased friend's family.   Please excuse me for not answer-
ing your letter before this.   I will call and explain my position more fully in
person.
"Yours, truly,                                              Patrick Fox."

We find here no unequivocal promise to pay.   Mr. Fox says that,
when he is in a position to pay, there is no one he would more
cheerfully pay.   This is certainly ambiguous.   So is the expression
that when he realizes, as he hopes to, on some of his interests in

real estate, he will not forget his deceased friend's family. These expressions left the whole matter in the air. They suggested hope of payment, but they could not well have inspired faith. In a general way, they evinced kind feeling and generous purpose. But that is all. There is no certainty about it. It is impossible to hold that this vague and guarded language, coupled, too, with a subsequent phrase, in which the writer says, "I will call and explain my position more fully in person," amounted to a clear, distinct, and unequivocal promise to pay, or that it necessarily or reasonably imported such a promise. There was consequently nothing for the jury to pass upon. The absence of the required promise was manifest upon the face of the letter, and there was no question of fact as to its intent or meaning.

The order appealed from was therefore right, and should be affirmed, with costs. All concur.